UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

DEVAR HURD,                                    :

                          Plaintiff,        :

             - against -                     :

THE CITY OF NEW YORK, SALATHIA          :
MIXON, in her individual capacity, and
STACEY FREDENBURGH, in her individual  :
capacity,
                                 :

                   Defendants.
-------------------------------------------------------------x

**COMPLAINT**

No. _____

Jury Trial Demanded

Plaintiff DEVAR HURD, by his attorneys, the LAW OFFICES OF JOEL B.

RUDIN, P.C., respectfully alleges, upon information and belief, as follows:

## NATURE OF THE ACTION

1.     In April 2016, Plaintiff DEVAR HURD was legally entitled to be

immediately freed from government custody, having already served in pretrial detention

the entire state prison sentence that had just been imposed on him.  Instead, he languished

in prison for more than 11 months because city and state officials conspired to delay his

release by deliberately miscalculating, or willfully failing to correct a false calculation of,

his jail-time credit.

2.     This civil action seeks monetary damages for Mr. Hurd, pursuant to 42

U.S.C. §§ 1983 and 1988 and state law, due to this wrongful imprisonment—in violation

of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States

Constitution as well as the Cruel and Unusual Punishment Clause of the Eighth Amendment—which was substantially caused by the misconduct of Defendants.

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

3.      This action arises under 42 U.S.C. §§ 1983 and 1988, and under the common law of the State of New York.

4.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, and under the principles of pendent jurisdiction.

5.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this district.

6.      On or about June 9, 2017, Plaintiff served the City of New York timely notice of the present claims, in accordance with N.Y. Gen. Mun. Law § 50-e.

7.      Plaintiff has duly complied with all conditions precedent to the commencement of this action.

## THE PARTIES

8.      Plaintiff DEVAR HURD is a citizen and resident of the State of New York and of the United States, and resides in Brooklyn, New York.

9.      Defendant CITY OF NEW YORK (the "City") is a municipal corporation of the State of New York and is a resident of the Eastern District of New York.

10.     The New York City Department of Correction ("NYCDOC") is an agency of the City.

11.     Employees of the NYCDOC are agents and employees of the City.

12.     The City is legally responsible for torts that NYCDOC employees commit within the scope of their employment.

13.     Defendant SALATHIA MIXON was, at all relevant times, a Jail Time Coordinator employed by the NYCDOC, acting within the scope of her authority and under color of state law.  She is named here in her individual capacity.

14.     Defendant STACEY FREDENBURGH was, at all relevant times, an Inmate Records Coordinator employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), acting within the scope of her authority and under color of state law.  She is named here in her individual capacity.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### Mr. Hurd's Conviction and Sentence

15.     Plaintiff Devar Hurd was arrested on July 23, 2013.

16.     He was subsequently indicted under Indictment No. 3134-2013 (the "Indictment").

17.     The Indictment alleged several counts, all of which were part of the same transaction or occurrence.

18.     Mr. Hurd was held in the custody of NYCDOC during the entire pendency of this criminal case.

19.     On December 18, 2014, Mr. Hurd's first trial on the Indictment ended in a mistrial.

20.     On October 8, 2015, after a second trial, Mr. Hurd was convicted on nine of the ten counts submitted to the jury.  The court declared a mistrial as to the remaining count.

21.     The nine counts of conviction were all misdemeanors (the "Misdemeanor Counts"), and consisted of seven counts of criminal contempt in the second degree, N.Y.P.L. § 215.50(3); one count of stalking in the fourth degree, *id.* § 120.45(1); and one count of harassment in the first degree, *id.* § 240.25.

22.     On October 23, 2015, Mr. Hurd was sentenced on the Misdemeanor Counts as follows:

   a.  one-year definite sentences for each of the seven counts of criminal contempt in the second degree;

   b.  a 90-day definite sentence for the count of stalking in the fourth degree; and

   c.  a 90-day definite sentence for the count of harassment in the first degree.

23.     The court specified that the sentences for the Misdemeanor Counts were to run consecutively to each other.

24.     On March 18, 2016, after a third trial, Mr. Hurd was convicted of the remaining count in the Indictment, for stalking in the second degree, an E felony (the "Felony Count").  *See* N.Y.P.L. § 120.55(2).

25.     On March 31, 2016, Mr. Hurd was sentenced on the Felony Count to an indefinite term of state imprisonment, with a minimum of one-and-one-third years, and a maximum of four years, to be served in the custody of DOCCS.

26.     The court did not specify whether the sentence for the Felony Count was to run concurrent with, or consecutive to, the sentences for the Misdemeanor Counts.

## The Proper Calculation of Mr. Hurd's Sentence

27.     As of March 31, 2016, the day Mr. Hurd was sentenced on the Felony Count, he had already served his entire sentence in NYCDOC custody and therefore should have been immediately released.

28.     By operation of law, the maximum length of incarceration Mr. Hurd could serve for the Misdemeanor Counts, all consecutive definite sentences, was two years. *See* N.Y.P.L. § 70.30(2)(b).

29.     By operation of law, because the court that sentenced Mr. Hurd to the indefinite sentence on the Felony Count did not specify whether that sentence was to run concurrent with, or consecutive to, the sentences on the Misdemeanor Counts, the indefinite sentence ran concurrent with those sentences.

30.     Further, by operation of law, Mr. Hurd's indeterminate sentence on the Felony Count merged with the definite sentences on the Misdemeanor Counts, meaning that the indeterminate sentence of one-and-one-third to four years could not legally run consecutive to the two years' worth of definite sentences. *See* N.Y.P.L. § 70.35.

31.     By operation of law, Mr. Hurd was eligible for a reduction of up to one-third of his maximum prison term if he were to be granted a time allowance for good behavior. *See* N.Y.P.L. § 70.30(4)(a); N.Y. Corr. Law § 803(1)(a)-(b).

32.     Since Mr. Hurd's maximum prison term was four years, he was eligible for a reduction of one year and four months if granted a time allowance for good behavior, and the total amount of time he would be required to serve for his convictions on the Indictment would be two years and eight months.

33.     Under New York law, a person's term of state imprisonment "shall" be reduced by the amount of time that person spent in pretrial detention—i.e., his "jail-time credit"—before starting the state prison sentence.  N.Y.P.L. § 70.30(3).

34.     As of March 31, 2016, the date Mr. Hurd was sentenced to state imprisonment on the Felony Count, he had been in the custody of NYCDOC for 983 days—or two years, eight months, and nine days.

35.     Therefore, assuming he received a time allowance for good behavior, he should have been released immediately.

**Mr. Hurd's Wrongful Confinement for
More than 11 Months Past His Release Date**

36.     The City of New York, by its officials the NYCDOC Commissioner of Correction and his or her employees—including Jail Time Coordinator Salathia Mixon and Principal Administrative Associate for the Legal Division, Edwin Felicien—had a legal duty to Mr. Hurd to provide DOCCS with an accurate computation of all jail-time credit to which he was entitled.  *See* N.Y. Corr. Law § 600-a.

37.     On or about April 13, 2016, NYCDOC issued a signed "Jail Time Certification" ("JTC") indicating that Mr. Hurd's "Total Jail Time" amounted to 996 days.

38.     On or about April 14, Mr. Hurd was transferred from the custody of NYCDOC to the custody of DOCCS at Ulster Correctional Facility.

39.     Mr. Hurd was told that he was eligible for immediate release because he had already served his entire sentence less good-behavior time, but that DOCCS had to process him through the state prison system before releasing him.  He was told that this processing would take only a few days.

40.     Upon his transfer to DOCCS custody, DOCCS officials began preparing for Mr. Hurd's immediate release.

41.     The same day he was transferred, April 14, DOCCS produced a "Legal Date Computation" indicating that Mr. Hurd was entitled to jail-time credit in the amount of two years, eight months, and 26 days.

42.     This document also indicated that Mr. Hurd's "conditional release date" was March 17, 2016 (which had already passed by the time he was transferred to DOCCS custody, on April 14).

43.     Mr. Hurd's "conditional release date" was the date on which he was legally entitled to be released should he be granted all the good-behavior time for which he was eligible.

44.     On April 15, DOCCS produced a "Report of Time Allowance Committee Review" indicating that Mr. Hurd was entitled to all the good-behavior time for which he was eligible—i.e., one year and four months.

45.     On April 19, the DOCCS Commissioner signed off on this report.

46.     Under New York law, a person "shall" be released on his conditional release date if he so requests.  N.Y.P.L. § 70.40(1)(b).

47.     From the time of his transfer to DOCCS custody, Mr. Hurd had repeatedly requested to be released immediately.

48.     Mr. Hurd therefore was legally entitled to be released immediately.

49.     Nevertheless, several days passed and still Mr. Hurd was not released.

50.     Mr. Hurd repeatedly complained to DOCCS officials that he was being wrongfully imprisoned.

51.     Unbeknownst to Mr. Hurd, after his transfer to DOCCS custody, NYCDOC employee Edwin Felicien had spoken with Defendant Fredenburgh, and they agreed to falsely recalculate Mr. Hurd's JTC so that he would not be released.

52.     On May 4, 2016, Defendant Fredenburgh asked Defendant Mixon for her assistance in obtaining an amended JTC so that DOCCS could continue to hold Mr. Hurd.

53.     Over the next few days, Mixon told Fredenburgh multiple times that, in fact, Hurd was entitled to all 996 days of jail-time credit that NYCDOC had certified in its original JTC.

54.     Mixon told Fredenburgh that she had even "called sentencing review" and confirmed that the original JTC was correct.

55.     On May 6, Felicien emailed Fredenburgh an amended JTC, which reduced Mr. Hurd's jail-time credit to 507 days.

56.     Felicien and Fredenburgh knew this JTC was incorrect.

57. Fredenburgh forwarded this email and the amended JTC to Mixon, who also knew the JTC was incorrect.

58. Later that day, Felicien emailed Fredenburgh a second amended JTC, which further reduced Mr. Hurd's jail-time credit to 469 days.

59. Felicien and Fredenburgh knew this JTC was also incorrect.

60. Fredenburgh also forwarded this email and amended JTC to Mixon, who also knew the JTC was incorrect.

61. Mixon, Fredenburgh, and Felicien knew that the amended JTCs were incorrect, that Mr. Hurd was entitled to be released immediately, and that if they failed to correct the amended JTCs, Mr. Hurd would remain wrongfully imprisoned.

62. Nevertheless, Mixon, Fredenburgh, and Felicien failed in their obligation to correct the false JTCs they had caused to be created, resulting in the continuation of Mr. Hurd's wrongful imprisonment.

63. On May 12, newly-assigned appellate counsel for Mr. Hurd emailed Ms. Mixon requesting Mr. Hurd's JTC.

64. Although Ms. Mixon knew that Mr. Felicien's JTCs for Mr. Hurd were incorrect, she failed to reveal her knowledge to Hurd's attorneys, but instead directed them to contact Felicien.

65. On May 13, Hurd sent a six-page letter to Felicien detailing the errors in Felicien's JTCs, and demanding that Felicien amend Hurd's JTC to restore to him the full 996 days of credit to which he was legally entitled so that he would be immediately given his freedom.

66.     Around the same time, Mr. Hurd wrote grievance letters to Ms. Fredenburgh and other DOCCS officials at Ulster Correctional Facility demanding that they release him in accordance with the original, accurate JTC.

67.     On May 24 and 25, Fredenburgh responded in writing to Hurd.  Even though Fredenburgh had already participated in securing amended JTCs for Mr. Hurd, and even though she knew those amended JTCs were incorrect, Fredenburgh told Hurd that she could do nothing to address his concerns, and that he must contact "Rikers Island."

68.     Felicien issued a third amended JTC on June 9, crediting Hurd with 524 days of jail time.

69.     This JTC was also incorrect.

70.     Felicien issued a fourth amended JTC on June 13, crediting Hurd with 508 days of jail time.

71.     This JTC was also incorrect.

72.     In late June 2016, Mr. Hurd was transferred from Ulster Correctional Facility to Watertown Correctional Facility, where he remained for a few days.  He was then taken to Riverview Correctional Facility.

73.     At Riverview, Mr. Hurd's Kafkaesque ordeal continued.  He desperately sought to have Felicien's errors corrected so that he would be granted the freedom to which he was entitled.

74.     Mr. Hurd pursued the official grievance process all the way up to the DOCCS Central Office Review Committee, filed two notices of claim, and wrote letters

to various Riverview officials, including the DOCCS Office of Sentencing Review, and the trial judge who had sentenced him.

75.     All of the DOCCS officials refused to intervene.

## Mr. Hurd Is Finally Released

76.     In March 2017, Mr. Hurd's appellate counsel wrote to the NYCDOC legal department, communicating Mr. Hurd's complaints about Felicien's erroneous JTCs.

77.     On March 23, NYCDOC Assistant General Counsel Justin Kramer instructed Ms. Mixon to notify DOCCS that Mr. Hurd was entitled to all of the jail-time credit he had initially been credited with almost a year before.

78.     The same day, Mixon prepared an amended JTC, which certified that Mr. Hurd was entitled to 996 days of jail-time credit—the same amount that she had verified he was entitled to back in May 2016.

79.     Mixon emailed this amended JTC to an inmate records coordinator at Riverview Correctional Facility.

80.     This inmate records coordinator verified that Mr. Hurd was still entitled to all of the good-behavior time for which he had been eligible when he was first transferred to DOCCS custody.

81.     DOCCS finally released Mr. Hurd on March 30, 2017.

82.     Because of the misconduct of Defendants Mixon and Fredenburgh—and of Mr. Felicien, for whose actions the City is liable under *respondeat superior*—Mr. Hurd

wrongfully remained in prison for at least 344 days, or 11 months and 11 days, beyond the date on which he was legally entitled to be released.

## FIRST CAUSE OF ACTION

**42 U.S.C. § 1983 — Violation of substantive due process under the Fifth and Fourteenth Amendments — Defendants Mixon and Fredenburgh**

83.     Plaintiff repeats and realleges each allegation contained in ¶¶ 1-82 of this Complaint.

84.     Mr. Hurd was legally entitled to be immediately released upon his transfer to DOCCS custody based upon the City jail-time credit to which he was automatically entitled as a matter of law, together with his State statutory good-time credit which he had been awarded.

85.     He had a liberty interest in his timely release conferred upon him by New York State law.

86.     Defendants Mixon and Fredenburgh knew that Mr. Hurd was entitled to be immediately released.

87.     By virtue of their positions, they had a duty to ensure his timely release.

88.     Nevertheless, they acted knowingly, willfully, intentionally, and with deliberate or reckless indifference to Mr. Hurd's right to be released, in a manner shocking to the conscience, to cause him to be held illegally and to be denied his liberty more than 11 months beyond his required release date.

89.     As a result of this misconduct, they are liable to Mr. Hurd for their violation

of his constitutional right to substantive due process under the Fifth and Fourteenth

Amendments to the United States Constitution.

## SECOND CAUSE OF ACTION

**42 U.S.C. § 1983 — Violation of procedural due process
under the Fifth and Fourteenth Amendments —
Defendants Mixon and Fredenburgh**

90.     Plaintiff repeats and realleges each allegation contained in ¶¶ 1-89 of this

Complaint.

91.     Mr. Hurd was legally entitled to be immediately released upon his transfer

to DOCCS custody, and he had a liberty interest in being immediately released.

92.     Defendants Mixon and Fredenburgh knew that Mr. Hurd was entitled to be

immediately released, and that he would remain wrongfully imprisoned if he did not

receive the jail-time credit to which he was entitled.

93.     Nevertheless, Defendants Mixon and Fredenburgh caused Mr. Hurd's jail-

time credit to be incorrectly calculated, or failed to correct known miscalculations of his

jail-time credit, thus causing him to be wrongfully imprisoned for more than 11 months

beyond the date on which he was entitled to be released.

94.     Established state procedures were inadequate to prevent Defendants Mixon

and Fredenburgh from wrongfully depriving Mr. Hurd of his right to be immediately

released.

## THIRD CAUSE OF ACTION

### State-law false imprisonment — Defendants Mixon, Fredenburgh, and the City of New York

95.     Plaintiff repeats and realleges each allegation contained in ¶¶ 1-94 of this Complaint.

96.     Defendants Mixon and Fredenburgh, and NYCDOC employee Felicien, intended to confine Mr. Hurd.

97.     Mr. Hurd was conscious of his confinement.

98.     Mr. Hurd did not consent to his confinement.

99.     Mr. Hurd's confinement was not privileged.

100.    Defendant City of New York is liable for the negligence of Defendant Mixon and Mr. Felicien under the principle of *respondeat superior*.

## FOURTH CAUSE OF ACTION

### 42 U.S.C. § 1983 — Cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments — Defendants Mixon and Fredenburgh

101.    Plaintiff repeats and realleges each allegation contained in ¶¶ 1-100 of this Complaint.

102.    Mr. Hurd was legally entitled to be immediately released upon his transfer to DOCCS custody, and he had a liberty interest in being immediately released.

103.    Mr. Hurd's wrongful imprisonment beyond this date lasted at least 344 days—or 11 months and 11 days.

104. Making a human being spend that many days in prison beyond the date on which he was legally entitled to be released inflicts a harm of such magnitude that it violates that person's Eighth Amendment right against cruel and unusual punishment, applied to the States under the Fourteenth Amendment.

105. Defendants Mixon and Fredenburgh knew that Mr. Hurd was entitled to sufficient jail-time credit to require his immediate release from custody, and that he would wrongfully remain imprisoned if he did not receive the jail-time credit to which he was entitled.

106. Nevertheless, Defendants Mixon and Fredenburgh knowingly, intentionally, willfully, recklessly, or out of deliberate indifference caused Mr. Hurd's jail-time credit to be reduced and/or failed in their responsibility to correct the false calculation, as a result of which he remained wrongfully imprisoned for at least 344 days.

107. Defendants Mixon and Fredenburgh are liable to Plaintiff for causing him to suffer cruel and unusual punishment within the meaning of the Eighth and Fourteenth Amendments to the United States Constitution.

### FIFTH CAUSE OF ACTION

**42 U.S.C. § 1983 — Failure to intervene in violation of the
Eighth and Fourteenth Amendments — Defendants
Mixon and Fredenburgh**

108. Plaintiff repeats and realleges each allegation contained in ¶¶ 1-107 of this Complaint.

109. Mr. Felicien violated Mr. Hurd's Eighth and Fourteenth Amendment rights to be immediately released upon his transfer to DOCCS custody.

110. Defendants Mixon and Fredenburgh each had an affirmative duty to Mr. Hurd to protect these constitutional rights from infringement by other government officials.

111. Defendants Mixon and Fredenburgh knew that Mr. Hurd's constitutional rights would be violated if any of Mr. Felicien's incorrect JTCs were to go into effect.

112. Defendants Mixon and Fredenburgh both had reasonable opportunities to intervene.

113. Nevertheless, Defendants Mixon and Fredenburgh intentionally, recklessly, or out of deliberate indifference failed to take reasonable steps to intervene.

114. In failing to intervene, Defendants Mixon and Fredenburgh were a proximate cause of Mr. Hurd's wrongful detention for at least 344 days beyond the date on which he was entitled to be released, in violation of his right to be free from cruel and unusual punishment.

### SIXTH CAUSE OF ACTION

**State-law negligent hiring, training, and supervision —
Defendant City of New York**

115. Plaintiff repeats and realleges each allegation contained in ¶¶ 1-114 of this Complaint.

116. By virtue of the foregoing, Defendant City of New York is liable to Mr. Hurd because of its intentional, deliberately indifferent, careless, reckless, and/or

negligent failure to adequately train, hire, supervise, and discipline its agents, servants, and/or employees.

**SEVENTH CAUSE OF ACTION**

**State-law intentional infliction of emotional distress —
Defendants Mixon, Fredenburgh, and the City of New
York**

117.   Plaintiff repeats and realleges each allegation contained in ¶¶ 1-116 of this Complaint.

118.   The conduct of Defendants Mixon and Fredenburgh, and of Mr. Felicien, to issue JTCs that they knew were erroneous and would result in Mr. Hurd's wrongful imprisonment, and to fail to correct the erroneous JTCs once they had been issued, was extreme and outrageous.

119.   Defendants Mixon and Fredenburgh, and Mr. Felicien, engaged in such conduct with an intention to cause, or in reckless disregard of the substantial probability that it would cause, Mr. Hurd severe emotional distress.

120.   This conduct by Defendants Mixon and Fredenburgh, and of Mr. Felicien, was a proximate cause of the severe emotional distress that Mr. Hurd suffered during, and continues to suffer after, his wrongful imprisonment.

121.   Defendant City of New York is liable for the conduct of Defendant Mixon and Mr. Felicien under the principle of *respondeat superior*.

## EIGHTH CAUSE OF ACTION

### State-law negligence — Defendants Mixon, Fredenburgh, and the City of New York

122.   Plaintiff repeats and realleges each allegation contained in ¶¶ 1-121 of this Complaint.

123.   Defendants Mixon and Fredenburgh, and NYCDOC employee Felicien, owed a duty to Mr. Hurd to accurately calculate his jail-time credit or to cause known errors to his jail-time credit calculation to be corrected.

124.   This was a ministerial duty as to which they had no discretion.

125.   Defendants Mixon and Fredenburgh, and NYCDOC employee Felicien, negligently breached that duty.

126.   These breaches caused Mr. Hurd to be wrongfully imprisoned for at least 11 months and 11 days and to suffer substantial mental and emotional harm and other injuries.

127.   Defendant City of New York is liable for the negligence of Defendant Mixon and Mr. Felicien under the principle of *respondeat superior*.

## DEMAND FOR DAMAGES

WHEREFORE, Plaintiff Devar Hurd demands judgment against the Defendants as follows:

a.   compensatory damages of not less than $1,040,000;

b.   punitive damages against Defendants Mixon and Fredenburgh of not less than $1,000,000;

c.      reasonable attorneys' fees, together with costs and disbursements, pursuant to 42 U.S.C. § 1988 and the inherent powers of this Court;

d.      pre-judgment interest as allowed by law; and

e.      such other and further relief as this Court may deem just and proper.


/s/ Joel B. Rudin
_____
JOEL B. RUDIN
Law Offices of Joel B. Rudin, P.C.
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
jbrudin@rudinlaw.com

*Attorney for Plaintiff*

Dated:      New York, New York
            June 26, 2018