UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
DEVAR HURD,

     *Plaintiff*,

          -against-

CITY OF NEW YORK, et al.,

     *Defendants*.
--------------------------------X

**MEMORANDUM & ORDER**

18-CV-3704(KAM)(JO)

**MATSUMOTO, United States District Judge:**

       Plaintiff Devar Hurd ("Hurd" or "plaintiff") brought this action pursuant to 42 U.S.C. § 1983 by filing a complaint on June 26, 2018, naming as defendants the City of New York, Salathia Mixon, and Stacey Fredenburgh ("Fredenburgh" or "defendant"). (*See* ECF No. 1, Compl.) The Complaint alleges Mixon, Fredenburgh, and the City deprived plaintiff of his constitutional rights under the Eighth and Fourteenth Amendments due to an error in his sentencing calculations that caused plaintiff to be imprisoned past his conditional release date. (*Id.* at 1.) Plaintiff filed an amended complaint on November 2, 2018, bringing largely the same claims but dropping state law claims against defendant Fredenburgh. (*See* ECF No. 23, Am. Compl.). On June 7, 2019, the City of New York and Mixon reached a settlement agreement with Hurd, and were subsequently dismissed from this action. (*See* ECF No. 53, Settlement Agreement; ECF No. 54, Order Dismissing Parties.) Plaintiff

seeks monetary damages due to his alleged wrongful imprisonment in violation of the Due Process Clause of the Fourteenth Amendment and of the Cruel and Unusual Punishment Clause of the Eighth Amendment.

Fredenburgh, the only remaining defendant, now moves this court to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim. (*See* ECF No. 33, Mot. to Dismiss; ECF No. 34, Def.'s Mem. ("DM"); ECF No. 35, Pl.'s Opp. ("Opp."); ECF No. 36, Def.'s Reply ("Reply").) For the reasons discussed below, the court GRANTS defendant's motion and finds that plaintiff's Fourteenth Amendment due process claim fails because he did not plead a substantive due process right, that plaintiff fails to plead a violation of his Eighth Amendment rights because he was released prior to the date his maximum sentence expired, and that regardless of those deficiencies, defendant is entitled to qualified immunity.

## BACKGROUND

The following facts are drawn exclusively from plaintiff's Amended Complaint. Hurd was arrested on July 23, 2013, and charged under Indictment No. 3134-2013 (the "Indictment"), (Am. Compl. 3), and was held in the custody of New York City's Department of Correction ("NYCDOC"), (*id.* at 6). On October 8, 2015, after a second trial on the Indictment, Hurd

was convicted on nine of ten counts submitted to the jury; the court declared a mistrial as to the tenth count. (*Id.* at 4.) The nine counts of conviction were all misdemeanors,[1] and on October 23, 2015, Hurd received consecutive one-year definite sentences for each of the seven counts of criminal contempt in the second degree; a 90-day definite sentence for the count of stalking in the fourth degree; and a 90-day definite sentence for the count of harassment in the first degree. (*Id.*) By operation of law, however, the maximum term of incarceration Hurd could serve for these consecutive, definite sentences was two years. (*Id.*); *see* N.Y. Penal Law § 70.30(2)(b).

On March 18, 2016, after a third trial on the Indictment, a jury convicted Hurd of the remaining count, stalking in the second degree, a felony (the "Felony Count"). (*Id.*); *see* N.Y. Penal Law § 120.55(2). On March 31, 2016, Hurd received an indeterminate prison sentence, with a minimum of one-and-one-third years, and a maximum of four years, to be served in the custody of New York State's Department of Corrections and Community Supervision ("DOCCS"), and that was required to run concurrently with his sentence on the misdemeanor counts. (Am. Compl. 5.) By operation of law,

---

[1] The misdemeanor counts consisted of seven counts of criminal contempt in the second degree, N.Y. Penal Law § 215.50(3); one count of stalking in the fourth degree, *id.* § 120.45(1); and one count of harassment in the first degree, *id.* § 240.25. (Am. Compl. 4.)

3

Hurd's indeterminate sentence on the Felony Count merged with the definite sentences on the misdemeanor counts and, accordingly, Hurd's maximum term of imprisonment for the ten counts of conviction was four years. (*Id.*)

On or about April 14, 2016, Hurd was transferred from NYCDOC custody to DOCCS custody at Ulster Correctional Facility. (*Id.* at 6.) Accordingly, NYCDOC officials issued a "Jail Time Certification" ("JTC") certifying that Hurd was entitled to 996 days of jail-time credit under N.Y. Penal Law § 70.30(3), for time served in City custody while awaiting trial and sentencing. (*Id.* at 5-6.) Concurrently, Hurd alleges, DOCCS officials produced a "Legal Date Computation" indicating that Hurd was eligible for good-time credit of up to one year and four months pursuant to N.Y. Penal Law §§ 70.30(4)(a), 70.40(1)(b), and N.Y. Correct. Law § 803(1)(a)-(b). (*Id.* at 6-7.) Plaintiff's Legal Date Computation also indicated he was entitled to jail-time credit of two years, eight months, and 26 days. (*Id.* at 7.) Based on these two credits, the Legal Date Computation further indicated that Hurd's conditional release date, assuming his good-time credit was approved, was March 17, 2016, *i.e.*, nearly a month prior to the date he was actually transferred to state custody. (*Id.*) On April 19, 2016, DOCCS awarded Hurd the full one year and four months of good-time credit for which he was eligible. (*Id.*)

Hurd alleges that his jail-time credit was erroneously reduced and that, as a result, he was wrongfully kept in prison past his conditional release date.  (*Id.* at 8.)  When Hurd was not immediately released upon the April 19, 2016 approval of his good-time credit, he repeatedly complained to unidentified prison officials about his alleged wrongful imprisonment.  (*Id.*)  According to Hurd, NYCDOC employee Edwin Felicien had spoken with defendant Fredenburgh, and the two agreed to reduce Hurd's jail-time credit so that he would not be released.  (*Id.*)

The Amended Complaint further alleges that on May 4, 2016, defendant Fredenburgh asked Mixon for her assistance in obtaining an amended JTC to reduce Hurd's jail-time credit so that DOCCS could continue to imprison him.  (*Id.*)  Over the next few days, Mixon told Fredenburgh multiple times that Hurd was entitled to all 996 days of jail-time credit that NYCDOC officials had certified in Hurd's original JTC, and that Mixon even "called sentencing review" to confirm that Hurd's original JTC was correct.  (*Id.*)

On May 6, 2016, Felicien emailed Fredenburgh an amended JTC, indicating Hurd was entitled to 507 days jail-time credit.  Later that day, Felicien emailed Fredenburgh a second amended JTC, which reduced Hurd's eligible jail-time credit to 469 days.  (*Id.* at 9.)  Fredenburgh and Mixon reviewed the JTCs but neither took any action to correct these JTCs.  (*Id.*)

Around May 13, 2016, Hurd wrote grievance letters to defendant Fredenburgh and other DOCCS officials at Ulster Correctional Facility demanding that they release him in accordance with the original, accurate JTC. (*Id.* at 10.) On May 24 and 25, Fredenburgh responded to Hurd in writing that she could do nothing to address his concerns and that he must instead contact "Rikers Island." (*Id.*) On June 9, Felicien issued a third amended JTC, crediting Hurd with 524 days of jail-time credit. (*Id.*) Once again, on June 13, 2016, Felicien issued a fourth amended JTC crediting Hurd with 508 days of jail-time credit. (*Id.*)

In late June 2016, Hurd was eventually transferred to Riverview Correctional Facility. (*Id.*) There he pursued the official grievance process to the DOCCS Central Office Review Committee, filed two Notices of Claim, and wrote letters to various Riverview officials and the DOCCS' Office of Sentencing Review. (*Id.*) DOCCS officials, however, "refused to intervene." (*Id.*)

Then, on March 23, 2017, NYCDOC Assistant General Counsel Justin Kramer instructed Mixon to notify DOCCS that Hurd was entitled to all the jail-time credit he had originally been entitled to. (*Id.* at 11.) That same day, Mixon prepared an amended JTC which certified that Hurd was entitled to 996 days of jail-time credit. (*Id.*) Mixon emailed this amended JTC to

an unidentified inmate records coordinator at Riverview

Correctional Facility.  (*Id.*)  This coordinator then verified

that Hurd was still entitled to all the good-time credit for

which he had been eligible when he was first transferred to

DOCCS custody, and DOCCS accordingly conditionally released

Hurd on March 30, 2017.  (*Id.*)

**LEGAL STANDARD**

## I.    Sufficiency of the Pleadings

A plaintiff must plead facts that, if accepted as

true, "state a claim to relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A

complaint is facially plausible when the "plaintiff pleads

factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct

alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A

complaint need not contain detailed factual allegations, but

must contain more than mere "labels and conclusions" or a

"formulaic recitation of the elements of a cause of action" or

"naked assertions" devoid of "further factual enhancement."  *Id*.

For motions under Rule 12(b)(6), the court assumes the truth of

all facts asserted in the operative complaint and draws all

reasonable inferences from those facts in favor of the non-

moving plaintiff.  *Global Network Commc'ns, Inc. v. City of New

York*, 458 F.3d 150, 154 (2d Cir. 2006).

**DISCUSSION**

Defendant moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted. Defendant first argues that plaintiff's due process rights were not violated because he did not, and cannot, establish that he has a liberty interest in conditional release, and that plaintiff had adequate post-deprivation remedies in the form of an Article 78 or state habeas proceeding, that satisfy due process. (DM 5-6.) Defendant thus contends that plaintiff's Fourteenth Amendment claim fails. As to plaintiff's Eighth Amendment claim that he was subjected to cruel and unusual punishment, defendant argues first that plaintiff has not pled the requisite mental culpability and deliberate indifference, and second, that plaintiff was not held beyond his maximum release date as a result of defendant's alleged conduct. (*Id.* at 7-9.) Alternatively, defendant argues that she is entitled to qualified immunity as there is no clearly established law that proscribed defendant's conduct.[2] (*Id.* at 9-11.)

---

[2] For the first time on reply, defendant appears to argue that plaintiff's claims under 42 U.S.C. § 1983 are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), which held that prisoner § 1983 claims that necessarily challenge the validity of a conviction or sentence are not cognizable unless the underlying conviction or sentence has been overturned. (Reply 5.) Applying *Heck* would require this court to consider whether plaintiff's § 1983 claims necessarily challenges the validity of his conviction or sentence, including its length. However, "[i]t is well-established that 'arguments may not be made for the first time in a reply brief.'" *Zirogiannis v. Seterus,*

Plaintiff responds that the Second Circuit has held prisoners possess a liberty interest in earned good-time credit and that New York's parole system creates a legitimate expectancy of release. (Opp. 12.) Plaintiff also responds that defendant's alleged deliberate indifference, supports a finding that defendant's conduct "shocked the conscience," thus establishing a sustainable substantive due process claim. (Opp. 10-12.)

As to his Eighth Amendment claim, plaintiff relies on his factual allegations that Fredenburgh knew of Hurd's plight and refused to rectify the error, thus supporting an inference she acted with deliberate indifference. (*Id.* at 6-8.) He also argues that prolonged confinement is measured not from a prisoner's maximum release date, but whether he was "detained after he should have been released." (*Id.* at 6.) Thus, plaintiff argues, his confinement beyond his originally

---

*Inc.*, 221 F. Supp. 3d 292, 298 (E.D.N.Y. 2016) (quoting *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993)). The court, therefore, will not consider "[n]ew arguments first raised in reply papers in support of [the] motion." *Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998). It is worth noting, however, that *Heck* does not pose an absolute bar to prisoner § 1983 claims in this Circuit, and *Heck*'s application to such claims brought by *former* prisoners is an open question. *See generally Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 457 (E.D.N.Y. 2018); *see also Green v. Montgomery*, 219 F.3d 52, 61 n.3 (2d Cir. 2000) ("*Heck* acts only to bar § 1983 suits when the plaintiff has a habeas corpus remedy available to him (*i.e.*, when he is in state custody). Because it does not appear that [the claimant is] presently in state custody his § 1983 action is not barred by *Heck*." (citations omitted)). In any event, the court need not rule on whether *Heck* applies to the instant case, and is reluctant to do so in light of the parties' failure to submit fulsome briefing on the question.

calculated conditional release date makes out an Eighth

Amendment claim for cruel and unusual punishment.

Finally, responding to defendant's assertion of

qualified immunity, plaintiff argues that defendant's subjective

belief requires factual development and is not suitable for

disposition on a motion to dismiss. (*Id.* at 17.) Second, he

argues that the law was clearly established through Second

Circuit precedent or that, in the alternative, it was not

objectively reasonable for defendant to believe she could not

alter Hurd's JTC certificates because she had in fact procured

changes in the first place. (*Id.*)

## I. Substantive Due Process

Plaintiff alleges that being held some 996 days beyond

his conditional release date violated a substantive due process

right conferred to him by New York State Law. (Am. Compl. 11.)

Defendant moves to dismiss this claim. She argues that

plaintiff fails to plead a substantive due process claim because

he cannot establish a liberty interest in his conditional

release and, in any event, that he was afforded due process.

(DM 5-7.) This latter argument, however, appears to contemplate

a *procedural* due process claim, challenging whether plaintiff

was afforded the process he was due for the deprivation he

suffered. S*ubstantive* due process claims, on the other hand,

generally require the court to consider whether the government

could affect such a deprivation, "regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). For his part, plaintiff expressly denies that he brings a procedural due process claim, (Opp. 12 n.2), and the Amended Complaint clearly states that plaintiff's first cause of action is for a violation of his substantive due process rights, (Am. Compl. 12). He thus argues that the Amended Complaint satisfies the substantive due process pleading standard of "egregious" or "conscience-shocking" conduct. (Opp. 10 (citing *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007) and *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005)).)

Yet, in support of plaintiff's argument, he relies heavily on cases in the Second Circuit, and other Circuits, clearly addressing *procedural* due process claims. (*See id.* (citing *Zurak v. Regan*, 550 F.2d 86, 92-93 (2d Cir. 1977) (affirming district court's order directing implementation of procedures at Riker's Island for timely disposing of conditional release applications)).) Taken together, plaintiff's disavowal of a procedural due process claim, coupled with his citation to, and reliance on, procedural due process cases, obscures the nature of the due process claim plaintiff asserts and defendant seeks to dismiss.

Nevertheless, the court will take plaintiff at his word and analyze his pleading as asserting a substantive due

process claim. Due Process claims must plead two elements: (1) that "the plaintiff had an actual interest protected by the Fifth Amendment—life, liberty or property—at stake;" and (2) that "[d]efendants infringed on that interest in a manner that was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)); *see also Leder v. Am. Traffic Sols., Inc.*, 630 F. App'x 61, 62 (2d Cir. 2015) ("A substantive due process claim under 42 U.S.C. § 1983 requires plaintiff to show (1) a fundamental liberty interest, (2) the deprivation of which was arbitrary in the constitutional sense."). The "[s]ubstantive due process analysis must begin with a careful description of the asserted right, for the doctrine of judicial self-restraint requires [the court] to exercise the utmost care whenever [the court is] asked to break new ground in this field." *Reno v. Flores*, 507 U.S. 292, 302 (1993). Thus, plaintiff must first establish that "he possessed a liberty or property interest of which [Fredenburgh] deprived him." *Sutera v. Transp. Sec. Admin.*, 708 F. Supp. 2d 304, 313 (E.D.N.Y. 2010). This he cannot do.

The substantive component of the "Due Process Clause protects only those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and

tradition, as well as implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *United States v. Windsor*, 570 U.S. 744, 808 (2013) (Roberts, C.J., dissenting); *see also Albright v. Oliver*, 510 U.S. 266, 272 (1994) (noting the substantive due process clause, for the most part, protects "matters relating to marriage, family, procreation, and the right to bodily integrity"). "Recognized fundamental rights include those created by the Constitution, most rights enumerated in the Bill of Rights, and certain enumerated rights, such as the right to privacy." *St. Francis Hosp. v. Sebelius*, 34 F. Supp. 3d 234, 246 (E.D.N.Y. 2014). While certain state-created rights are entitled to protections of *procedural* due process, *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995), "*substantive* due process right[s] are created only by the Constitution." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring)(emphasis added); *see also Greenholtz v. Neb. Penal Inmates*, 442 U.S. 1, 7 (1979); *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL–CIO v. Town Bd. of Town of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994); *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001).

Thus, "a government or state-created right is not a fundamental right implicating substantive due process," *St. Francis Hosp.*, 34 F. Supp. 3d at 246, and the court must look to

the Federal Constitution or other sources of protected interests "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325 (1937). The Supreme Court, however, has held that "[t]here is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence." *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011); *see also Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981). Even if substantive due process could reach state-created rights, "the Second Circuit has declined to opine on whether New York recognizes a liberty interest in conditional release." *Hayes v. Annucci*, No. 14-CV-8845, 2016 WL 1746109, at *3 (S.D.N.Y. Apr. 28, 2016) (citing *Doe v. Simon*, 221 F.3d 137, 139 (2d Cir. 2000)); *cf. Graziano v. Pataki*, 689 F.3d 110, 114–15 (2d Cir. 2012) ("We have squarely held that because the New York parole scheme is not one that creates a legitimate expectancy of release, '[prisoners] have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable.'").

Plaintiff alleges he was deprived of his timely conditional release from state custody. This is clearly a state-created right, as the Supreme Court has held that conditional release is not protected by the Constitution. Therefore, plaintiff has no substantive due process right to conditional release, and arguably no procedural due process

right, either.  Although the court finds that, if true, plaintiff's allegations that Fredenburgh *intentionally* took actions to keep plaintiff imprisoned without justification might shock the judicial conscience, plaintiff has failed to satisfy the first pleading requirement for a substantive due process claim.  The court therefore GRANTS defendant's motion to dismiss as to plaintiff's substantive due process claim.

Were the court to construe plaintiff's claim as one for procedural due process violations, encompassing state-created rights, his claim similarly would fail.  First, "there is no procedural due process violation 'when a state employee intentionally deprives an individual of property or liberty [through random, unauthorized acts by the state employee], so long as the State provides a meaningful post [-]deprivation remedy.'"  *Sharp v. Inc. Vill. of Farmingdale*, No. 16-CV-2994, 2018 WL 4404075, at *6 (E.D.N.Y. Sept. 14, 2018) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)).  Plaintiff does not allege that there were no post-deprivation remedies available to him or that they were inadequate.  Even still, it is well-settled that "an Article 78 proceeding is a perfectly adequate post[-]deprivation remedy."  *Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002); *see also Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 165 (S.D.N.Y. 2007)(assuming without

deciding New York created legitimate expectation for inmates in conditional release and nevertheless concluding the plaintiff was afforded adequate due process in the form of Article 78 or state habeas proceeding).

Finally, the court finds that, even if plaintiff adequately pleaded either a substantive or procedural due process violation, defendant Fredenburgh would be entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts are free to consider either prong first, that is, whether the constitutional violation occurred, or was sufficiently alleged, or whether the constitutional right was clearly established at the time of the alleged conduct. *Id.* at 235-36 (holding that district courts "should . . . decide[] which of the two prongs of the qualified immunity analysis should be addressed first").

First, plaintiff's argument that defendant's state of mind requires factual development is unavailing. The Supreme Court has made quite clear that the "defense of qualified immunity may not be rebutted by evidence that the defendant's

conduct was . . . improperly motivated." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). Evidence of subjective intent, therefore, "is simply irrelevant to [the] defense." *Doninger v. Niehoff*, 642 F.3d 334, 349 (2d Cir. 2011) (quoting *Crawford-El*, 523 U.S. at 588).

Furthermore, the law is not so clearly established that prisoners maintain a fundamental liberty interest, or even a state-created liberty interest protected by the procedural due process clause. *See D'Angelo v. Annucci*, No. 16-CV-6459, 2017 WL 6514692, at *9 (S.D.N.Y. Dec. 19, 2017). As discussed above, "neither the Supreme Court nor the Second Circuit has held that the Fourteenth Amendment guarantee of freedom from incarceration without due process includes the right to early release prior to the expiration of an individual's sentence." *McMillan v. Perez*, No. 14-CV-3854, 2016 WL 4926202, at *6 (S.D.N.Y. Sept. 14, 2016) (citing *Greenholtz*, 442 U.S. at 7); *see also Abed v. Armstrong*, 209 F.3d 63, 66-67 (2d Cir. 2000). In fact, district courts in the Second Circuit have indicated the opposite. *See McMillan*, 2016 WL 4926202, at *6 (collecting cases). It cannot be said that the case law clearly foreshadows finding such a right in the context of substantive due process.

Plaintiff's two cited authorities, *Zurak* and *Abed*, are inapposite. Though the court in *Zurak* may have found that inmates have a liberty interest for conditional release worthy

of *procedural* due process protections, that proposition has since been clearly refuted by the Second Circuit. *Graziano*, 689 F.3d at 114–15. Furthermore, *Zurak* did not address liberty interests in the context of *substantive* due process. And the court in *Abed* discusses a state-created liberty interest in earned good-time credits. Here, plaintiff does not claim that he was deprived of good-time credits without due process, but instead claims that his release was delayed by the erroneously amended JTCs. Neither case, therefore, clearly establishes that prolonging detention past an inmate's conditional release date is a constitutional violation, or that inmates have a protected interest in earned jail-time credits for the purposes of conditional release.

Plaintiff argues that even if there was not clearly established law on the issue, "this is one of the rare cases where the unlawfulness of the defendants' conduct was so clear that qualified immunity would be inappropriate" because her conduct was "outrageous and patently unconstitutional." (Opp. 17-18.) But, as discussed above, defendant's intent is irrelevant for the purposes of the court's qualified immunity determination. Thus, defendant Fredenburgh is alternatively entitled to qualified immunity as to plaintiff's substantive due process claims. For this and the foregoing reasons, defendant's

motion to dismiss plaintiff's substantive due process claim is
GRANTED.

## II.    Cruel and Unusual Punishment

Plaintiff brings a second claim under § 1983, alleging
a violation of his Eighth Amendment right to be free from cruel
and unusual punishment.  (Am. Compl. 13-14.)  Specifically, he
alleges that Fredenburgh knew or should have known plaintiff
would have remained in prison if he did not receive the full
jail-time credit to which he was entitled.  (*Id.* ¶ 106-08.)

Defendant also moves to dismiss this claim.  She
argues that plaintiff fails to plead both the required intent
and constitutional harm because he was not imprisoned past his
*maximum* sentence.  (DM. 7.)  Eighth Amendment claims require two
well-pleaded elements, one subjective and one objective.
"First, the prisoner must allege that the defendant acted with a
subjectively 'sufficiently culpable state of mind.'"  *Crawford
v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (quoting *Hudson v.
McMillian*, 503 U.S. 1, 8 (1992)).  "Second, he must allege that
the conduct was objectively 'harmful enough' or 'sufficiently
serious' to reach constitutional dimensions."  *Id.* (quoting
*Hudson*, 503 U.S at 8, 20).  What constitutes objectively
harmful or sufficiently serious conduct is "context specific,"
*Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013), and "depends
upon the claim at issue," *Hudson*, 503 U.S. at 8.  In the context

of prolonged detention, a defendant's "sufficiently culpable state of mind" must meet, at a minimum, deliberate indifference. *Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993).

The parties dispute whether plaintiff's allegations rise to deliberate indifference on the part of Fredenburgh. For her part, defendant Fredenburgh appears to overlook that plaintiff alleges her intentional conduct, not just that she ignored a known risk. *See Brims v. Burdi*, No. 03-CV-3159, 2004 WL 1403281, at *2 (S.D.N.Y. June 23, 2004) (finding complaint alleged deliberate indifference where "defendants knew, but ignored, the fact that [plaintiff's] . . . release date was imminent"). Whether or not these allegations are susceptible to proof, the court must accept them as true. As noted above, Fredenburgh's alleged conduct is troublesome and would certainly satisfy deliberate indifference if not willfulness, as plaintiff alleges Fredenburgh *agreed* with Felicien to keep plaintiff incarcerated past his conditional release date. Nevertheless, the court finds that plaintiff has not satisfied the objective pleading requirement of a harm rising to constitutional dimensions.

Courts have found that detention prolonged beyond conditional release does not satisfy the objective harm requirement for Eighth Amendment claims. *D'Angelo*, 2017 WL

6514692, at *10 (collecting cases).  In coming to this
conclusion, courts rely on the several cases in the Second
Circuit which found that detention prolonged days beyond a
*maximum* sentence did not violate the Eighth Amendment.  *See,*
*e.g.*, *Calhoun*, 999 F.2d at 653 (holding that five days of
incarceration beyond the plaintiff's maximum sentence "did not
inflict a harm of a magnitude that violates a person's Eighth
amendment rights"); *Brims v. Burdi*, No. 03-CV-3159, 2014 WL
1403281, at *2 (S.D.N.Y June 23, 2004) (finding detention six
days beyond maximum sentence "not a harm of sufficient magnitude
to implicate the Eighth Amendment");  *Lozada v. Warden Downstate*
*Corr. Facility*, No. 10-CV-8425, 2012 WL 2402069, at *2 (S.D.N.Y.
June 26, 2012) (finding detention seven days beyond maximum
sentence insufficient to bring Eighth Amendment claim).  Given
this backdrop, at least two courts in this Circuit have granted
motions to dismiss a prisoner's complaint bringing Eighth
Amendment claims where the complaint alleged detention prolonged
beyond a conditional release date, and not a maximum release
date.  *See Hayes v. Annucci*, No. 14-CV-8846, 2016 WL 1746109, at
*5 (S.D.N.Y. April 28, 2016); *D'Angelo*, 2017 WL 6514692, at *10.

        Because plaintiff was released prior to the expiration
date of his maximum sentence, he was not exposed to any
additional punishment than permitted by the Constitution, let
alone cruel and unusual punishment.  Therefore, plaintiff has

not sufficiently pleaded an Eighth Amendment claim, and defendant's motion to dismiss this claim is GRANTED.

Even if the court were to find that plaintiff has adequately pleaded an Eighth Amendment violation, defendant would be entitled to qualified immunity. Plaintiff argues that *Zurak* and *Abed*, among others, clearly establish that Hurd had a liberty interest in conditional release, and that any unlawful prolonged imprisonment violates the Eighth Amendment. (Opp. 17.) Defendant argues that caselaw within the Second Circuit notes uncertainty around whether the detention of an inmate past a conditional release date, but not beyond his maximum sentence, violates any constitutional right. (DM 10.) The court agrees with defendant; the relevant case law does not clearly establish or foreshadow that prolonging a prisoner's detention beyond his conditional release date constitutes cruel and unusual punishment. Therefore, and in the alternative, defendant would be entitled to qualified immunity for plaintiff's Eighth Amendment claim.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is GRANTED, and plaintiff's Amended Complaint is dismissed in its entirety. The Clerk of Court is respectfully

directed to dismiss the Amended Complaint, enter judgment, and

close the case.

**SO ORDERED.**

Dated:   September 26, 2019
         Brooklyn, New York

                                    _____/s/_____
                                    **Kiyo A. Matsumoto**
                                    United States District Judge